IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE<br><br>ABIEZER RAMOS GONZALEZ and<br>LIZ YANELLY BAEZ RAMIREZ<br><br>Debtor(s) | CASE NO. 23-02251 (ESL)<br><br>CHAPTER 13 |
| ABIEZER RAMOS GONZALEZ and<br>LIZ YANELLY BAEZ RAMIREZ<br><br>Plaintiff(s)<br><br>vs.<br><br>COOPERATIVA ROOSEVELT ROADS<br><br>Defendant | ADVERSARY NO. 25-00058 (ESL)<br><br>FILED AND ENTERED 9/15/2026 |

**OPINION AND ORDER**

This adversary proceeding is before the court upon the *Motion for Summary Judgment* (dkt. #11), *Statement of Uncontested Material Facts in Support of Motion for Summary Judgment* (dkt. #12), and *Memorandum of Law in Support of Motion for Summary Judgment* (dkt. #13) filed by Cooperativa Roosevelt Roads ("**Cooperativa**"). Also before the court are the *Opposition to Defendant's Motion for Summary Judgment* (dkt. #23), and *Opposition to Defendant's Statement of Uncontested Material Facts in Support of Motion for Summary Judgment* (dkt. #24) filed by the Debtor-Plaintiffs; the *Sur-Reply to Plaintiffs' Opposition to Cooperativa's Motion for Summary Judgment* (dkt. #31) filed by Cooperativa; and the *Response to Defendant's Sur-Reply and Further Opposition to Defendant's Motion for Summary Judgment* (dkt. #38) filed by the Debtor-Plaintiffs.

For the reasons discussed below, the *Motion for Summary Judgment* (dkt. #11) is DENIED.

Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(a) and (b). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

Factual and Procedural Background

1. On November 10, 2025, the Debtor-Plaintiffs filed an adversary proceeding complaint (dkt. #1) against Cooperativa alleging that Cooperativa has (i) continued collection efforts against Plaintiffs by unilaterally applying a post-petition setoff in the amount of approximately $451.18 from Plaintiffs' account held at Cooperativa, in contravention of the automatic stay, and (ii) withheld and restricted access to the remaining funds in said account, thereby preventing Plaintiffs from withdrawing or utilizing monies. Debtor-Plaintiffs assert alleged willful violation of the automatic stay, 11 U.S.C. § 362 (Count I), and violation of the Fair Credit Billing Act, 15 U.S.C § 1666h(a) (the "**FCBA**") (Count II), and seek declaratory relief, actual and statutory damages of not less than $500 and not greater than $5,000, punitive damages, reasonable attorneys' fees, as provided by 11 U.S.C. § 362(k) and 15 U.S.C. § 1640, and an order directing the immediate release of unlawfully held funds. Debtor-Plaintiffs.

2. On December 23, 2025, Cooperativa filed an *Answer to Complaint* (dkt. #10).

3. On December 24, 2025, Cooperativa filed a *Motion for Summary Judgment* (dkt. #11), a *Statement of Uncontested Material Facts in Support of Motion for Summary Judgment* (each a "**Cooperativa Proposed Fact**", dkt. #12), the *Affidavit of Carlos R. Maldonado Rivera* ("**Maldonado Affidavit**", dkt. #12-1), and a *Memorandum of Law in Support of Motion for Summary Judgment* (dkt. #13).

4. On January 21, 2026, the Debtor-Plaintiffs filed an *Opposition to Defendant's Motion for Summary Judgment* (the "**Opposition to Summary Judgment**", dkt. #23), and an *Opposition to Defendant's Statement of Uncontested Material Facts in Support of Motion for Summary Judgment* (dkt. #24).

5. On February 6, 2026, Cooperativa filed a *Sur-Reply to Plaintiffs' Opposition to Cooperativa's Motion for Summary Judgment* (the "**Reply**", dkt. #31). Among other things, Cooperativa requests the court grant summary judgment, dismiss the complaint with prejudice, as all claims are barred by the binding effect of the confirmed Plan, and award Cooperativa reasonable costs and attorneys' fees incurred in defending this action.

6. On March 10, 2026, the Debtor-Plaintiffs filed a *Response to Defendant's Sur-Reply and Further Opposition to Defendant's Motion for Summary Judgment* (the "**Sur-Reply**", dkt. #38).

7. The Initial Scheduling Conference scheduled for March 23, 2026, at 10:00 a.m. was continued without a date pending a decision on the motion for summary judgment. See dkt. #40, 41.

Legal Issues

The issues before this court are whether Cooperativa's collection of funds from the Debtor-Plaintiffs' shares account, following confirmation of the plan (and subsequent post-confirmation modification), constituted (i) a violation of the automatic stay; (ii) an offset prohibited by 15 U.S.C. § 1666h or, alternatively, authorized under the exception set forth in 15 U.S.C. § 1666h(a)(1)–(2).

Uncontested Material Facts

After reviewing the record, the court finds that the following material facts are uncontested:

1. Prior to filing for bankruptcy, the Debtors opened a credit card account, a shares account, and a savings account with Cooperativa. See *Cooperativa Proposed Fact* ¶ 4; *Maldonado Affidavit* ¶ 5; dkt. #24, ¶ 4 (Debtors' admission).

2. On July 22, 2023, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code (the "**Petition Date**"), and disclosed Cooperativa as a creditor owed $549.58, $299.00 of which are secured by "Coop. Roosevelt Road, shares". See Bankr. Case No. 23-02251, dkt. #1, *Schedule A/B*, p. 12, item no. 17 (disclosing a savings account of $248.00, a shares

account of $145.00 , and Coop. Roosevelt Road shares totaling $299.00); *Schedule C*, p. 25 (claiming exemption over $248.00 in savings account); *Schedule D*, p. 27, item no. 2.2 (disclosing claim of $549.58, secured by shares valued at $299.00); *Statement of Intention for Individuals Filing Under Chapter 7*, p. 62 ("[s]urrender of property", specifically "Coop. Roosevelt Road, shares"); *Creditor Matrix*, p. 79.

3. As of the Petition Date, the Debtors owed a balance on their MasterCard credit card account with Cooperativa. See dkt. #24, ¶ 5 (Debtors' admission).

4. On July 22, 2023, the court issued a *Notice of Chapter 7 Bankruptcy Case* (dkt. #5), which was served on Cooperativa via first class mail to the following address: Apartado 31, Fajardo, PR 00738-0031.[1] See *Certificate of Service*, dkt. #7.

5. Cooperativa received notice and had knowledge of Debtors' bankruptcy petition. See *Certificate of Service*, Bankr. Case No. 23-02251, dkt. #7. See also *Answer to Complaint*, dkt. #10, ¶¶ 12, 18, 33 (Cooperativa's admission).

6. On August 14, 2023, Cooperativa filed (i) a *Notice of Appearance* (dkt. #13), and (ii) Proof of Claim No. 3 in the secured amount of $726.79 on account of a Master Card debt (the "**Master Card Debt**"), secured by "shares & deposits" pursuant to 7 L.P.R.A. § 1366(b), and subject to a sight of setoff ("**POC #3**"). See Bankr. Case No. 23-02251, POC #3-1, p. 2, item 9 and 11.

7. On August 31, 2023, the case was converted to Chapter 13. See Bankr. Case No. 23-02251, dkt. #15, 16, 17.

8. On September 27, 2023, Debtor Ramos González withdrew $299.00 from Debtors' shares account with Cooperativa to Debtors' savings account with Cooperativa. See *Cooperativa Proposed Fact* ¶ 11; *Maldonado Affidavit* ¶ 13. See also *Shares History*, dkt. #12-1,

[1] Cooperativa's Fed. R. Bankr. P. 2002 notice address is P.O. Box 31, Fajardo, PR 00738-0031. See Bankr. Case No. 23-02251, POC #3-1, p. 1, item 3; POC #3-2, p. 1, item 3. The court highlights that "apartado" or "apartado postal" is Spanish for "P.O. Box". As such, the notice address provided in the *Creditors' Matrix* and POC #3 are the same.

p. 7, transaction no. 41377832, and dkt. #12-2, p. 7, transaction no. 41377832; *Withdrawal of Shares Request*, dkt. #12-1, p. 8, and dkt. #12-2, pp. 8-9.

9. On January 17, 2024, the Debtors filed an *Objection to Proof of Claim #3* objecting to the secured status of POC #3, and arguing that the Fair Credit Billing Act "prevents a card issuer from setting-off a debtor's deposit accounts to off-set alleged credit card debts". See Bankr. Case No. 23-02251, dkt. #39, ¶ 2.

10. On January 22, 2024, Cooperativa filed an amended POC #3 reclassifying the Master Card Debt as an unsecured debt no longer subject to a sight of setoff. See Bankr. Case No. 23-02251, POC #3-2.

11. On February 21, 2024, the court denied Debtors' objection to POC #3 upon the filing of the amended POC #3. See *Order*, Bankr. Case No. 23-02251, dkt. #43.

12. On April 1, 2024, the court entered an *Order Confirming Plan* (Bankr. Case No. 23-02251, dkt. #65), confirming the *Chapter 13 Plan dated 03/08/2024* (the "**Plan**", Bankr. Case No. 23-02251, dkt. #61).

13. Part 3 of the confirmed *Plan* proposed the surrender of the collateral that secures Cooperativa's claim as follows:

> The Debtor(s) elect to surrender to [Cooperativa] the collateral [(Coop. Roosevelt Road, shares)] that secures [Cooperativa's] claim. The Debtor(s) request that upon confirmation of this plan, the stay under 11 U.S.C. § 362(a) be terminated as to the collateral only and that the stay under § 1301 be terminated in all respects. Any allowed unsecured claim resulting from the disposition of the collateral will be treated in Part 5 below.

*Plan*, Bankr. Case No. 23-02251, dkt. #61, Part 3, item 3.5.

14. Part 5 of the confirmed *Plan* further provides that nonpriority unsecured claims shall be paid *pro rata* from the funds remaining after disbursements have been made to all other creditors provided for in this plan. See *Plan*, Bankr. Case No. 23-02251, dkt. #61, Part 5, item 5.1.

15. Part 8 of the confirmed *Plan*, which outlines nonstandard plan provisions, reads as follows:

> **<u>PAYMENT/DISTRIBUTION ON SECURED AND/OR PRIORITY CLAIMS</u>**
> Any payment and/or distribution on any secured and/or priority claim, which is listed for or provided for under Section … 3.5 … of this Chapter 13 Plan is specifically subject to and/or conditioned upon such secured or priority creditor being deemed the holder of an "Allowed Claim" in at least such an amount. Conversely, where the secured or priority creditor is deem[ed] to hold an "Allowed Claim' in an amount less than the amount provided for herein or holder of a not "Allowed Claim" (i.e., where the claim is disallowed) then and notwithstanding the amount set-forth in Section ….3.5 … the secured and/or priority creditor shall only be entitled to a payment[ ]up to the amount of its "Allowed Claim."

*Plan*, Bankr. Case No. 23-02251, dkt. #61, Part 8, item 3.

16. On December 3, 2024, Cooperativa setoff the amount of $451.18 held in Debtors' shares account to partially satisfy the Master Card Debt. <u>See</u> *Cooperativa Proposed Fact* ¶ 8; *Maldonado Affidavit* ¶ 10. <u>See also</u> *Shares History*, dkt. #12-1, p. 7, transaction no. 46609102, and dkt. #12-2, p. 7, transaction no. 46609102.

17. On December 13, 2024, Debtor Ramos González withdrew $397.00 from Debtors' shares account with Cooperativa. <u>See</u> *Cooperativa Proposed Fact* ¶ 11; *Maldonado Affidavit* ¶ 13. <u>See also</u> *Shares History*, dkt. #12-1, p. 7, transaction no. 46734282, and dkt. #12-2, p. 7, transaction no. 46734282; *Withdrawal of Shares Request*, dkt. #12-1, p. 9, and dkt. #12-2, p. 8, and dkt. #12-2, pp. 10-11.

18. On July 21, 2025, the court entered an *Order Granting Modification of Plan After Confirmation* (dkt. #92), approving the *Chapter 13 Plan dated 06/24/2025* (the "**PCM**", Bankr. Case No. 23-02251, dkt. #90) which proposes the same treatment for Cooperativa outlined in the prior confirmed Plan. <u>See</u> Bankr. Case No. 23-02251, dkt. #90, Part 3, item 3.5; Part 5, item 5.1; and Part 8, item 3.

19. Both the confirmed Plan and the approved PCM treat Cooperativa's claim as secured. <u>See</u> *Plan*, Bankr. Case No. 23-02251, dkt. #61, Part 3, item 3.5; *PCM*, Bankr. Case No. 23-02251, dkt. #90, Part 3, item 3.5.

20. Both the confirmed Plan and the approved PCM provide for the surrender of the collateral that secures Cooperativa's claim, specifically "Coop. Roosevelt Road, shares"; termination of the stay under 11 U.S.C. § 362(a) upon confirmation; and for any allowed

unsecured claim resulting from the disposition of the collateral to be paid *pro rata* from the funds remaining after disbursements have been made to all other creditors provided for in such Plan or PCM. See *Plan*, Bankr. Case No. 23-02251, dkt. #61, Part 3, item 3.5 and Part 5, item 5.1; *PCM*, Bankr. Case No. 23-02251, dkt. #90, Part 3, item 3.5, and Part 5, item 5.1.

21. At all relevant times following the Petition Date, Cooperativa has not withheld or placed any restrictions on Debtors' access to their accounts. See *Cooperativa Proposed Fact* ¶ 10; *Maldonado Affidavit* ¶ 12. See also *Shares History*, dkt. #12-1, 12-2; *Withdrawal of Shares Request(s)*, dkt. #12-1, 12-2.

22. At all relevant times following the Petition Date, the Debtors have continued unrestricted, full and complete access to their savings and shares accounts with Cooperativa. See *Cooperativa Proposed Fact* ¶ 11; *Maldonado Affidavit* ¶ 13. See also *Shares History*, dkt. #12-1, 12-2; *Withdrawal of Shares Request(s)*, dkt. #12-1, 12-2.

Position of the Parties

Cooperativa avers that although its amended claim (POC #3-2) was filed as unsecured and without a right of set-off, the confirmed Plan provided secured treatment for the claim via the surrender of collateral and termination of the stay. Cooperativa argues that the only setoff Cooperativa pursued was on December 3, 2024, eight (8) months after confirmation. Therefore, there was no violation of the automatic stay by Cooperativa under 11 U.S.C. § 362(a), willful or otherwise. With respect to the claims under Section 1666(h) of the FCBA, which bars a creditor from taking any action to "offset" a credit card holder's indebtedness to the creditor card issuer unless the offset is authorized in writing by the cardholder, Cooperativa argues that upon confirmation of the Plan, Cooperativa accepted the surrender of a portion of the collateral that secured its Master Card debt claim against the Debtor-Plaintiffs, as expressly permitted under such Plan. Because the Debtor-Plaintiffs authorized Cooperativa's "offset" in writing, and the parties are subject to the federal confirmation order permitting the surrender of collateral to Cooperativa, 15 U.S.C § 1666h(a) was not violated by Cooperativa.

In its *Opposition to Summary Judgment*, the Debtor-Plaintiffs argue that Cooperative applied a post-petition setoff of approximately $451.18 against Debtor-Plaintiffs' deposit account to satisfy an alleged prepetition credit card debt, and deprived Debtor-Plaintiffs of access to their funds without legal authorization and despite having actual knowledge of the bankruptcy case. They argue that the forgoing constitute actual injury under 11 U.S.C. § 362(k). Debtor-Plaintiffs argue that Section 3.5 of the confirmed Plan "is expressly conditional and presupposes the existence of collateral that actually secures the creditor's claim. Here, however … no such collateral existed. Cooperativa's original Proof of Claim asserting secured status was objected to, and Cooperativa thereafter amended its Proof of Claim, reclassifying the claim as unsecured … As a result, there was no collateral securing Cooperativa's claim to surrender, and Section 3.5 could not operate to confer secured status or authorize any disposition of funds" (dkt. #23, p. 9). "Because Cooperativa's alleged secured claim was never allowed as secured, and was instead amended and reclassified as unsecured, Cooperativa never held an Allowed Secured Claim within the meaning of the Plan. Under the Plan's own express terms, any treatment contemplated under Section 3.5 was therefore inoperative as to Cooperativa, and the Confirmed Plan did not transform Cooperativa into a secured creditor or authorize any setoff or unilateral application of Debtors' funds" (id., pp. 9-10). Because "[a] confirmed plan is binding under 11 U.S.C. § 1327(a) only as to the treatment of allowed claims, [] it cannot be used to override or circumvent the allowance procedure mandated by §§ 501 and 502" (id., p. 12). Consequently, " "[a] Chapter 13 plan may *treat* secured claims, but it cannot *transform* an unsecured claim into a secured one, nor can it operate as an independent source of lien creation or enforcement authority" (id., p. 13) (italics original). "Because Cooperativa never held an Allowed Secured Claim, it lacked any legal basis to act as a secured creditor or to exercise unilateral control over estate property" (id., p. 14).

With respect to the claims under Section 1666(h) of the FCBA, the Debtor-Plaintiffs argue that "[a] confirmed Chapter 13 plan cannot authorize conduct that a federal consumer protection statute expressly prohibits. The FCBA imposes independent statutory limits on a card issuer's conduct, and those limits are not displaced by plan confirmation under § 1327(a). Confirmation

binds parties to the treatment of allowed claims; it does not immunize creditors from compliance with nonbankruptcy federal law" (id., pp. 16-17). Consequently, the Debtor-Plaintiffs posit that the "conditional plan language" in the confirmed Plan is not "a blanket authorization to offset consumer deposit accounts, despite the absence of a valid security interest and despite the FCBA's express prohibition" (id., p. 17).

In its *Reply* (dkt. #31), Cooperativa avers that Debtor-Plaintiffs arguments rest on a fundamental misreading of the confirmed Plan as POC #3-2 constitutes an allowed claim, and the Plan expressly calls for the surrender of the collateral, and on mischaracterization of applicable bankruptcy law because the claims allowance process does not override plan confirmation. Cooperativa further posits that Debtor-Plaintiffs reliance on Part 8 is misplaced as that provision addresses distributions and payments under the plan, not the surrender of collateral under Section 3.5. And, that the claims allowance process cannot be weaponized to override confirmed plan provisions. Cooperative further argues that the Plan constitutes "written authorization" under § 1666h(a)(1). In their *Sur-Reply* (dkt. #38), the Debtor-Plaintiffs largely repeat their earlier arguments.

## Applicable Law and Analysis

### (A) Summary Judgment Standard under Fed. R. Civ. P. 56

Under Fed. R. Civ. P. 56, made applicable to adversary proceedings under Fed. R. Bankr. P. 7056, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). See also Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322-332 (1986); In re Colarusso, 382 F.3d 51 (1st Cir. 2004); Alicea v. Wilkie, 2020 WL 1547064, 2020 U.S. Dist. LEXIS 57213 (D.P.R. 2020).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine dispute as to any material fact or in which only a question of law is involved." Charles A. Wright, Arthur R. Miller, & Mary K. Kane, 10A Federal Practice and Procedure § 2712 (4th ed., West 2022). "Rule 56 provides the means by which a

party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. (footnotes omitted). "[S]ummary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court … is empowered [only] to determine whether there are issues to be tried." Id. (footnotes omitted). See also Bernier v. Treasury Dep't (In re Bernier), 2022 WL 17096264, at *5, 2022 Bankr. LEXIS 3283, at *17-18 (Bankr. D.P.R. 2022) ("the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.").

"A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008), quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir.1996). See also Andino-Oquendo v. Federal National Mortgage Association, 2023 WL 2245072, at *1, 2023 U.S. Dist. LEXIS 34375, at *2 (D.P.R. 2023), quoting Alicea, 2020 WL 1547064, at *2, 2020 U.S. Dist. LEXIS 57213, at *4. A fact is material only if it is determinative of the outcome of the litigation. See Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976); Maymí v. P.R. Ports Auth., 515 F. 3d 20, 25 (1st Cir. 2008); In re Financial Oversight and Management Board for Puerto Rico, 650 B.R. 334, 353 (D.P.R. 2023), quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) ("Material facts are those that 'possess[ ] the capacity to sway the outcome of the litigation under the applicable law,' and there is a genuine factual dispute where an issue 'may reasonably be resolved in favor of either party.' ").

When considering a petition for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party. See Thompson, 522 F.3d at 172, citing Franceschi v. United States VA, 514 F.3d 81, 83 (1st Cir. 2008). The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. See Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991); Alicea, 2020 WL 1547064, at *2, 2020 U.S. Dist. LEXIS 57213, at *4. It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to

making a showing of support for those claims for which it bears the burden of trial. See Bias v. Advantage International, Inc., 905 F.2d 1558, 1560–61 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 958 (1990).

To that end, L. Civ. R. 56(b) requires a movant to include a separate, short, and concise statement of material facts and to support each factual assertion with a citation to the evidentiary record. See L. Civ. R. 56(b), (e). "The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment," and "shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." L. Civ. R. 56(e).

The moving party cannot prevail if any essential element of its claim or defense requires trial. See López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. See Celotex, 477 U.S. at 325; Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988). In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. See Kennedy v. Josephthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987); Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions, and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. See Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980). The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. See López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. See Adickes, 398 U.S. at 159.

(B) The Claims Allowance Process and the Binding Effect of Plan Confirmation on Claims

Sections 501 and 502 of the Bankruptcy Code govern the filing and allowance of claims in bankruptcy proceedings. See 11 U.S.C. §§ 501, 502. Section 501(a) and Section 502(a) provides that "[a] creditor … may file a proof of claim", 11 U.S.C. § 501(a), which "is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a).

In the context of a case under Chapter 13 of the Bankruptcy Code, a secured creditor is not required to file a proof of claim or participate in the bankruptcy process to protect its lien because the same passes through the bankruptcy process unaffected. See In re Alonso, 525 B.R. 195, 204 (Bankr. D.P.R. 2015), citing Dewsnup v. Timm, 502 U.S. 410, 417 (1992), In re Galindez, 514 B.R. 79, 91 (Bankr. D.P.R. 2014), and 11 U.S.C. § 506(d). However, to the extent a secured creditor wants to partake in the plan distributions, it must file a proof of claim. See id.

Section 1327(a) of the Bankruptcy Code, which addresses the effects of plan confirmation, provides as follows:

> The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C. § 1327(a).

"Section 1327(a) is a strong statement: The terms of a confirmed plan are legal obligations of the debtor and all creditors without regard to whether the plan provides for the creditor's claim and without regard to whether the creditor participated in the confirmation process." In re Galindez, 514 B.R. 79, 89 (Bankr. D.P.R. 2014) (citations omitted). "Plan confirmation is a final order, with *res judicata* effect, and is imbued with the strong policy of favoring finality." Id., quoting Factors Funding Co. v. Fili (In re Fili), 257 B.R. 370, 373 (1st Cir. BAP 2001). "Absent timely appeal, the confirmed plan is *res judicata* and its terms are not subject to collateral attack. The *res judicata* effect of confirmation may be eliminated only if confirmation is revoked or if the case is later dismissed or converted to another chapter." Id. (citations omitted).

The Bankruptcy Appellate Panel for our First Circuit has discussed the binding effect of a confirmed plan under Section 1327(a) and stated as follows:

> [O]nce a bankruptcy plan is confirmed, the debtor and each creditor are bound by its terms. As the First Circuit has explained, confirmation of a Chapter 13 plan customarily is *res judicata* as to all issues that were or could have been decided during the confirmation process. There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of the order. The United States Supreme Court has emphasized that plan confirmation orders are final and binding regardless of pre-confirmation rights held by creditors. See United Student Aid Funds, Inc. v. Espinosa, [559 U.S. 260] (2010).
>
> The binding effect of confirmation has led courts to conclude that once a plan is confirmed, a creditor's rights and interests are defined within the boundaries of the plan, and proceedings that are inconsistent with the confirmed plan are improper, even if they fall within an exception to the automatic stay.[8] As one commentator has stated:
>
>> Because creditors are limited to those rights that they are afforded by the plan, they may not take actions to collect debts that are inconsistent with the method of payment provided for in the plan. They may not exercise prepetition rights they may have had to collect a debt by setoff, foreclosure or otherwise. The automatic stay of section 362(a) usually remains in effect as to collection efforts on virtually all prepetition debts until the case is closed or dismissed or until a discharge order is entered. *Even actions that would be permitted by an exception to the automatic stay can be barred by the terms of a confirmed plan.*
>
> 4–1327 *Collier Bankruptcy Manual,* at ¶ 1327.02[1][b] (emphasis added). Thus, it is clear that all creditors are bound by a confirmation order and that even actions that would be permitted by an exception to the automatic stay (such as the interception of tax refunds to pay domestic support obligations as authorized by § 362(b)(2)(f)) may be prohibited under a confirmed plan.

New Hampshire v. McGrahan (In re McGrahan), 459 B.R. 869, 874-875 (1st Cir. BAP 2011) (citations omitted). See also Galindez, 514 B.R. at 97.

In Galindez, *supra*, this court concluded that the provisions contained in a confirmed plan (or a post-confirmation modified plan) trump the contrary provisions of an allowed amended proof of claim so long as the secured creditor whose claim is subject to modification has been duly noticed, as follows:

> The second approach labeled as the "the chapter 13 plan process over the claims process" or "emphasis on the *res judicata* effect of a confirmed plan" proposes that the chapter 13 plan confirmation under § 1327 is sufficient to modify a secured creditor's lien through a plan. … [I]f [a] secured creditor has been duly noticed of the proposed chapter 13 plan, notwithstanding that it has filed a discrepant proof of claim, then the secured creditor's failure to object to the plan can result in a modification of its claim and lien. See In re Gordon, 2011 Bankr.Lexis 3848, at *22; In re Pence, 905 F.2d 1107 (7th Cir.1990); In re Ramey, 301 B.R. 534, 545 (Bankr.E.D.Ark.2003) ("The principles of *res judicata* should be applied except in cases where the notice to the creditor of the plan treatment of the lien is so insufficient that it violates due process of law"); In re Searcy, 333 B.R. 617, 623 (Bankr.D.Mass.2005) ("... provisions in an *adequately noticed* Chapter 13 plan which modify the rights of a secured creditor are the functional equivalent of a claims objection under § 502(a). It does not matter, substantively, which route the debtor takes so long as the creditor is informed of the itinerary and has an adequate opportunity to respond to either by defending its proof of claim or by pressing an objection to the plan.").
>
> …
>
> This court adopts the second approach, which emphasizes the binding effect of a confirmed plan provided that the due process requirements of reasonable and actual notice were satisfied. This view is aligned with the Espinosa decision, which supports the principle of finality of plan confirmation orders. Confirmation of a chapter 13 plan affords it *res judicata* effect and therefore prevents relitigation of matters that either were raised or could have been raised prior to confirmation.
>
> After carefully analyzing the pertinent jurisprudence, the commentators and the relevant sections of the Bankruptcy Code, this court concludes that the stage of the bankruptcy process in which the inconsistency between the claims allowance process and the binding effect of the plan arises is critical and essential in determining which should prevail. Also, the sufficiency of the notice of the treatment provided to a secured creditor before plan confirmation must afford reasonable time for the creditor to object to the plan. Thus, timing and due notice are key to the binding effect of a confirmed plan and the finality of plan confirmation orders. On the other hand, if a discrepant secured proof of claim is filed before the plan confirmation, then the debtor or Trustee should object the same as part of the claims allowance/disallowance process and before the entry of the confirmation order. The conflict between the claims allowance process and the plan confirmation process oftentimes occurs when the plan gets confirmed prior to the claims bar date and the creditor files after plan confirmation a timely proof of claim. It behooves the debtor or the chapter 13 trustee to object the secured proof of claim prior to confirmation to avoid the friction between the claims allowance process and the plan confirmation process.

514 B.R. at 95-98 (citations omitted, italics original).

In this case, Cooperativa originally filed a partially secured proof of claim. See POC #3-1. Following the Debtor-Plaintiffs' objection, Cooperativa amended its claim solely to reclassify

it as wholly unsecured; the amount of the claim ($726.79) remained unchanged. See POC #3-2. Because no party objected to POC #3-2, the amended claim is deemed allowed pursuant to 11 U.S.C. § 502(a). Notwithstanding Cooperativa's allowed claim being wholly unsecured, the Debtor-Plaintiffs elected to provide for POC #3 as secured claim under both the *Plan* and subsequent *PCM*. Specifically, both the *Plan* and *PCM* identify the claim as secured by "Coop. Roosevelt Road, shares". See *Plan*, Bankr. Case No. 23-02251, dkt. #61, Part 3, item 3.5; *PCM*, Bankr. Case No. 23-02251, dkt. #90, Part 3, item 3.5. Now, the Debtor-Plaintiffs contend that Part 8 of the *Plan* and *PCM* qualify or condition the treatment afforded to Cooperativa under Part 3. See *Plan*, Bankr. Case No. 23-02251, dkt. #61, Part 8, item 3; *PCM*, Bankr. Case No. 23-02251, dkt. #90, Part 8, item 3.

The court is not persuaded by the Debtor-Plaintiffs interpretation of Part 8. As explained above, where a creditor receives adequate notice, the treatment set forth in a confirmed plan (or a post-confirmation modified plan) trump the contrary provisions of an allowed proof of claim. Here, the Debtor-Plaintiffs themselves elected to treat Cooperativa's claim as secured and expressly identified their shares at Cooperativa as the collateral securing that claim. The confirmed *Plan* and approved *PCM* therefore define Cooperativa's rights with respect to that collateral.

In reliance on the finality of the confirmation order and on the treatment prescribed in the *Plan* and *PCM*, including the surrender of the collateral identified by the Debtor-Plaintiffs as securing Cooperativa's claim, Cooperativa collected $451.18 from the Debtor-Plaintiffs' shares account. See Cooperativa Proposed Fact ¶ 8; Maldonado Affidavit ¶ 10; *Shares History*, dkt. #12-1, p. 7, transaction no. 46609102, and dkt. #12-2, p. 7, transaction no. 46609102. To the extent that Cooperativa collected funds constituting the collateral surrendered under the confirmed *Plan* and approved *PCM*, that collection was consistent with the confirmed treatment of its claim and cannot constitute a violation of the automatic stay.

The present record, however, raises a genuine dispute as to whether the entire $451.18 collected by Cooperativa constituted collateral subject to surrender under the *Plan* and *PCM*. The

Debtor-Plaintiffs scheduled the Cooperativa shares at $299.00 and disclosed Cooperativa's claim as secured by shares valued at $299.00.[2] See Bankr. Case No. 23-02251, dkt. #1, *Schedule A/B*, p. 12, item no. 17 (disclosing Coop. Roosevelt Road shares totaling $299.00); *Schedule D*, p. 27, item no. 2.2 (disclosing claim of $549.58, secured by shares valued at $299.00). Thus, although the confirmed *Plan* and approved *PCM* authorized Cooperativa to proceed against the surrendered shares collateral, a material factual issue remains regarding the amount and scope of that collateral, including whether Cooperativa's collection of $451.18 exceeded the value of the shares identified by the Debtor-Plaintiffs in their schedules and Plan treatment. Summary judgment as to Count I is therefore not appropriate.

(C) The Bankruptcy Code and the FCBA

The Truth in Lending Act ("**TILA**"), which promotes "the informed use of credit", Pub. L. No. 90-321, 82 Stat. 146 (1968), was amended via the FCBA, to create more protections against "inaccurate and unfair credit billing and credit card practices" Pub. L. No. 93-495, 88 Stat. 1500 (1974) (codified as amended at 15 U.S.C. § 1666-1666j), including a prohibition on offsets. See 15 U.S.C. § 1666h. Specially, the FCBA provides that "[a] card issuer may not take any action to offset a cardholder's indebtedness arising in connection with a consumer credit transaction under the relevant credit card plan against funds of the cardholder held on deposit with the card issuer. Id. § 1666h(a); 12 C.F.R. § 226.12(d)(1)." Johnson v. Bank of Am., Inc., 2021 WL 4307148, at 3, 2021 U.S. Dist. LEXIS 182624 (D.N.M. 2021) (emphasis omitted).

The FCBA contains an exception to the offset prohibition under which a card issuer may offset to satisfy a debt where:

> (1) such action was previously authorized in writing by the cardholder in accordance with a credit plan whereby the cardholder agrees periodically to pay debts incurred in his open end credit account by permitting the card issuer periodically to deduct all or a portion of such debt from the cardholder's deposit account, and

[2] The court may take judicial notice of its own docket. See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

> (2) such action with respect to any outstanding disputed amount not be taken by the card issuer upon request of the cardholder.

15 U.S.C. § 1666h(a)(1)-(2).

Regulation Z, which implements 15 U.S.C. § 1666h, nevertheless provides that a card issuer may offset a cardholder's indebtedness "*if it obtains or enforces a consensual security interest in the funds*." In re Lyon, 2010 WL 3777827, at 6-7, 2010 Bankr. LEXIS 3374 (Bankr. D. Ariz. 2010) (italics original). See also 12 C.F.R. § 226.12(d)(2). "To qualify for the exception stated in § 226.12(d)(2), a security interest must be affirmatively agreed to by the consumer and must be disclosed in the issuer's account-opening disclosures under § 226.6. The security interest must not be the functional equivalent of a right of offset; as a result, routinely including in agreements contract language indicating that consumers are giving a security interest in any deposit accounts maintained with the issuer does not result in a security interest that falls within the exception in § 226.12(d)(2)." In re Ocasio Delgado, 2025 WL 2231167, at *2 (Bankr. D.P.R. Aug. 5, 2025), citing Martino v. Am. Airlines Fed. Credit Union, 121 F. Supp. 3d 277 (D. Mass. 2015).

Here, the parties dispute whether Cooperativa's collection of funds from the Debtor-Plaintiffs' shares account constitutes an impermissible offset under the FCBA or, instead, the enforcement of a consensual offset pursuant to the confirmed *Plan* and approved *PCM*. The parties further dispute whether the *Plan* and *PCM*, considered together with the underlying account and credit-card agreements, satisfy the requirements of the written-authorization exception set forth in 15 U.S.C. § 1666h(a)(1)–(2).

Resolution of Count II necessarily requires a review of the underlying account and credit-card agreement, as well as a determination of whether Cooperativa's collection efforts conformed to the treatment prescribed by the confirmed *Plan* and approved *PCM*. The record presently does not permit that determination. Although POC #3-2 includes a *Retail Installment Sale Contract, Revolving Credit Plan, and Credit Card Agreement* ("Contrato de Venta al Por Menor a Plazos[,] Plan de Cuentas Rotativas [y] Contrato de Tarjeta de Credito"), the same is in the Spanish language. See POC #3-2, p. 5. To the extent a certified English translation has not been filed, the

underlying account and credit-card agreement is not properly before the court.[3] Consequently, the court cannot consider the agreement's terms in determining whether the requirements of 15 U.S.C. § 1666h(a)(1)-(2), or the consensual-security-interest exception recognized by Regulation Z, have been satisfied. Moreover, and as discussed above, a genuine dispute of material fact remains as to whether the $451.18 collected by Cooperativa exceeded the value and scope of the shares collateral surrendered under the *Plan* and *PCM*. That unresolved factual issue also bears directly on whether Cooperativa's conduct falls within a recognized exception to the FCBA's prohibition against offsets. Accordingly, summary judgment as to Count II is not appropriate.

## Conclusion

For the reasons stated herein, the *Motion for Summary Judgment* (dkt. #11) is DENIED. The initial scheduling conference shall be rescheduled via separate order.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 15th day of September 2026.

Enrique S. Lamoutte
United States Bankruptcy Judge

[3] "It is well settled that the law incontrovertibly demands that federal litigation in Puerto Rico be conducted in English", in accordance with 48 U.S.C. § 864. Banco Popular de P.R. v. Santiago-Salicrup, 630 B.R. 374, 378 (D.P.R. 2021), citing Estades-Negroni v. Assocs. Corp. of N. Am., 359 F. 3d 1, 2-3 (1st Cir. 2004). See also 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."); L. Civ. R. 5(c) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English…"); P.R. LBR 9070-1(c) ("All Exhibits and documentary evidence in Spanish or other language shall be fully translated to the English language by a certified translator."); In re Bernier, 2022 WL 17096264, at *6-7, 2022 Bankr. LEXIS 3283, at *17-18 (Bankr. D.P.R. 2022) (holding that documents not in the English language should not be considered). Consequently, this court will only consider the merits of those documents filed in the English language.